1  STUART LIBICKI, Esq. (SBN 57626)
2  SCHWARTZ, STEINSAPIR,
     DOHRMANN & SOMMERS LLP
3  6300 Wilshire Boulevard, Suite 2000
   Los Angeles, CA 90048-5268
4  Telephone:  (323) 655-4700
   Facsimile:  (323) 655-4488
5  Email:      sl@ssdslaw.com

6  WILLIAM T. PAYNE (SBN 90988)
7  PAMINA EWING (PA Bar # 59244)
   FEINSTEIN DOYLE
8    PAYNE & KRAVEC, LLC
   429 Forbes Avenue, 17th Floor
9  Pittsburgh, PA 15219
   Phone:  (412) 281-8400
10 Fax: (412) 281-1007
11 wpayne@stemberfeinstein.com
   pewing@stemberfeinstein.com
12
   Arthur Grebow, Esq. (SBN 41374)
13 GREBOW & RUBIN LLP
   16133 Ventura Boulevard, Suite 260
14 Encino, CA  91436
   Phone: 818-783-1100
15 Fax: (818) 783-1103
16 agrebow@grebowrubinlaw.com

17              **UNITED STATES DISTRICT COURT**

18              **CENTRAL DISTRICT OF CALIFORNIA**

19                  **WESTERN DIVISION**

| | |
|---|---|
| 20  NATHANIEL WILSON, et al., | **CASE NO.:  2:12-CV-10214-SVW-MAN** |
| 21                    Plaintiffs, | **DECLARATION ARTHUR GREBOW N SUPPORT OF PLAINTIFFS' UNOPPOSED MOTIONS FOR (1) CLASS CERTIFICATION AND (2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| 22       vs. | |
| 23  THE MILL GROUP INC., et al., | |
| 24                    Defendants. | *[Part 1 of 3 – Pages 1 to 47]* |
| 25 | **Date:**    **September 9, 2013** |
| | **Time:**    **1:30 p.m.** |
| 26 | **Place:**   **Courtroom 6** |
| 27 | |
| 28 | |

ID. #_____

DECLARATION OF ARTHUR GREBOW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTIONS FOR (1) CLASS CERTIFICATION AND (2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## DECLARATION OF ARTHUR GREBOW

I, ARTHUR GREBOW, hereby declare that:[1]

1.      I am a partner in the firm of Grebow & Rubin, LLP ("GR"), which is located in Los Angeles, California.  The Firm, along with the law firms of Schwartz, Steinsapir, Dohrmann & Sommers, LLP ("SSDS") and Feinstein Dolye Payne & Kravec, LLC ("FDPK"), represent the Plaintiffs Nathaniel Wilson, Richard Servello, David Shwartz and Tim Hoffman ("Class Representative" or "Plaintiffs") in this action.

2.      I submit this declaration in support of Plaintiffs' (combined) Unopposed Motions for (1) Class Certification and (2) Preliminary Approval of Class Action Settlement ("Preliminary Approval Motions").

3.      As Plaintiffs note in their Preliminary Approval Motions, they have entered into a proposed Amended Settlement Agreement, as to which they are seeking preliminary and final approval pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23.  Under the conditions stated in Section 1 of the Amended Settlement Agreement (filed with the Preliminary Approval Motions), Defendants do not oppose Plaintiffs' Motion for Class Certification or Preliminary Approval of the Settlement.  A copy of the Proposed Amended Settlement Agreement is attached as Exhibit "A".

4.      Pursuant to Section 2 of the proposed Amended Settlement Agreement, Class Representatives seek class certification of a Settlement Class defined as follows:

---

[1] This declaration is identical to the one I previously submitted, dated June 29, 2013, except for changes in paragraphs 10, 12 (b) and 12(f) primarily relating to the execution of the Amended Settlement Agreement and the reduction in attorney's fees requested.  Exhibit C attached hereto, proposed Class Notice, has been correspondingly changed as well.

1

1            All individuals who at any time on or after

2            September 14, 2009 and up to and including March 14,

3            2013 worked or performed and  completed services in

4            California for The Mill in the pre-production, production

5            or post-production processes of motion pictures,

6            television programs advertising, game art or other visual

7            content, as to whom Yurcor performed services for The

8            Mill and/or the respective individual (for example,

9            payroll processing services, "Employer of Record"

10           services or "Yurcor's third party payroll services

11           program").

12     5.     Pursuant to Section 2(C)(1)(c) and Exhibit 2 of the proposed

13 Amended Settlement Agreement all the persons Plaintiffs propose to be included in

14 the class ("Class Members") are identified, and they number 205.

15

16                **BACKGROUND OF THE LITIGATION AND**

17                     **PROPOSED SETTLEMENT**

18     6.     The Defendants in this class action are The Mill Group, Inc., dba The

19 Mill ("The Mill") and The Churchill Benefit Corporation, dba Yurcor ("Yurcor").

20 Class Members, as employees, sought to recover wages and penalties under the

21 California Labor Code against their joint employers, The Mill and Yurcor, for

22 statutory violations, as well as damages for conversion and injunctive relief for

23 violation of Business and Professions Code §17200, et seq.

24     7.     On September 14, 2012, Plaintiffs filed the action in Los Angeles

25 County Superior Court as Case No. BC492168 alleging that Defendants The Mill

26 and Yurcor, as joint employers, unlawfully deducted from Class Members' wages

27 *employer* (as opposed to employee) required FICA, FUTA, SUI taxes and Workers

28

2

1  Compensation deductions and/or improperly misclassified Class Members as

2  independent contractors for which Defendants would be subject to additional

3  penalties.

4       On November 29, 2012, Defendants The Mill and Yurcor removed such

5  action to the United States District Court, Central District of California.  On

6  February 13, 2013, Plaintiffs filed a Second Amended Class Action Complaint in

7  this Court. The Plaintiffs Second Amended Complaint added claims under

8  California's Labor Code Private Attorneys General Act of 2004, California Labor

9  Code §2698-2699, modified the description of the Class, and named an additional

10  Plaintiff, Tim Hoffman.

11       8.    The allegations in Plaintiffs Second Amended Complaint included the

12  following:

13       (a)    The Mill is a production company, located in Los Angeles,

14  developing and creating visual effects for the broadcasting of commercial

15  advertisements, film, and television.  After The Mill identified, interviewed,

16  negotiated "pay" (wage) rates with, and effectively entered into oral employment

17  agreements with Class Members, The Mill advised Class Members to contact

18  Yurcor to complete the paperwork. The Mill intentionally omitted discussion with

19  Class Members about whether they were engaged by The Mill as employees or

20  independent contractors.  The Mill, by its actions and representations, inaccurately

21  led Class Members to believe they were hired as employees and that Yurcor was

22  The Mill's payroll service company, i.e., the company charged with nothing more

23  than keeping time records and issuing customary payroll checks with the normal

24  employee deductions (e.g., ADP).

25       (b)    Class Members generally performed and completed their artist

26  services for The Mill in a matter of weeks and were usually not paid by Yurcor

27  until after their employment was completed (as no biweekly check was issued until

28

3

ID. #_____

DECLARATION OF ARTHUR GREBOW IN SUPPORT OF PLAINTIFFS' UNPPOPOSED MOTIONS FOR (1)
CLASS CERTIFICATION AND (2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1 | more than one-month after employment began).  The Mill exercised total control
2 | over the manner in which the work was to be performed by Class Members,
3 | including setting their wages (aka pay rates), hours and other working terms and
4 | conditions. The Mill required employees to work at its Los Angeles facility from 9
5 | am to 7 pm Monday through Friday, and weekends if necessary; The Mill made
6 | assignments and supervised them; and Class Members were required to use
7 | company tools, materials and equipment.

8 |       (c)      Yurcor is a self-described "Employer of Record" that currently states
9 | on its website:

**Third-party payroll and benefits for consultants**

*[such as Plaintiff Class Members]*

Whether you are self-employed, incorporated, or
work thorough staffing supplier, Yurcor Employer of
Record combines the freedom to choose your own
assignments with the security of back office support and
portable health benefits offered by being part of an
established corporation.

As a Yurcor consultant, you run your own business
unit as a Yurcor W-2 employee.  You choose your
clients, do the work, enter your time and expenses online,
and let Yurcor take care of all the rest.  Working with
Yurcor eliminates the reluctance of many businesses to
hire 1099 consultants so you can actually win more
business.

Yurcor executes contracts, gets time and expenses approved,
bills clients, does collections, deposits receivable, and pays payroll
taxes so you do not have to.

4

1

**Consultants payroll and benefits service**

2
   Yurcor's Employer of Record service is designed to simplify

3
   the key processes of delivering consulting services and offer

4
   employee benefits in a   manner that is compliant with tax and labor

5
   regulations.

6
   (d)   Yurcor provided its services for Class Members to The Mill pursuant

7
to a contract between the two Defendants.  In its relationship with The Mill and

8
Class Members, Yurcor referred to itself as the Class Members' "Employer of

9
Record" and to the Class Members as its "employees."  Yurcor acted in various

10
ways as Class Members' ostensible employer, e.g., by issuing to Class Members in

11
its own name W-4s and I-9s for completion, and providing them with W-2s (but

12
not 1099s) at year-end. Yurcor calls Class Members "consultants" and

13
"employees" but treats them as independent contractors.

14
   (e)   Yurcor exercised control, with the agreement or acquiescence of The

15
Mill, over the amounts actually paid to Class Members for their services.  These

16
amounts were not in accordance with the agreements made by The Mill and Class

17
Members individually:  In addition to taking standard employer payroll deductions

18
from Class Members' paychecks for their work at The Mill, Yurcor – without

19
authorization from Class Members -- unlawfully deducted from the agreed upon

20
wages Yurcor's "administrative overhead costs." Yurcor's "administrative

21
overhead costs" consisted of the employer share of FICA, FUTA, SUI taxes and

22
worker's compensation deductions, apparently for insurance coverage for the

23
individual.

24
   (f)   The employment of Class Representative Nathaniel Wilson is

25
illustrative of the treatment of Class Members.

26
   In August 2011, The Mill offered Wilson work as visual effects artist on a

27
project.  Mr. Wilson performed almost all his work throughout his career as an

28

1    employee.  On August 24, 2011, Mr. Wilson was sent an e-mail from The Mill

2    indicating that: "We are good to confirm you from the 29[th] August to 2[nd]

3    September at $550 per 10-hour day, with weekend work, *and with The Mill*

4    *covering Yurcor administrative expenses.*  We have a first hold on you, which I am

5    pretty confident will turn into a booking from 3rd September to 16 September.  In

6    addition, we would like to keep you on hold from 17 September to 30 September

7    for your future work." (emphasis added)

8         (g)    On August 25, 2011, Mr. Wilson received an introductory letter from

9    Yurcor. The letter stated, in pertinent part:

10          "2.    Yurcor's Employer of Record (EOR) service

11          combines the freedom to choose your own assignments

12          with the security of portable health and retirement

13          benefits and the convenience of back office support.

14          "3.    As a Yurcor consultant, you run your own business

15          unit as a Yurcor W-2 employee.  You select your clients,

16          set your rates, perform the work, enter your time and

17          expenses online.

18          "4.    You will be covered under Yurcor's business

19          insurance and workers compensation policies.  Yurcor

20          will handle your invoicing, collections and expenses and

21          deduct payroll taxes from your direct deposit payroll.

22          "5.    Please note:  you will also keep most of the pre-tax

23          deductions you now enjoy as a 1099 freelancer.

24          "Summary:  By using Yurcor's services you gain W-2

25          status and many of the benefits and services of a full time

26          position while keeping all the career freedom and tax Z

27

28

1        "Please review the attached PDF for more detailed

2        information – including how going W-2 compares with

3        1099 status and self-incorporation."

4      (h)  On or about the same date, Mr. Williams received a second E-mail

5    from Yurcor that explained:

6        "You will be covered under Yurcor's business insurance

7        and worker's compensation policy.  Yurcor will handle

8        your invoicing, collections and expenses and deduct

9        payroll taxes from your direct deposit payroll.  Yurcor

10       will deduct the employer tax (worker's comp, FICA,

11       FUTA, SUI), as well as the employee side of the taxes

12       from your payroll when a payroll is ran."

13     (i)  On September 30, 2011, Mr. Wilson received a Payroll Report from

14   Yurcor indicating that for the period from August 29 to September 8, he worked

15   eleven days for a total amount of $6,050 (Yurcor labeled it as "Yurcor labor

16   collected").  From this total, Yurcor deducted the total amount of $804.63, which

17   Yurcor labeled as "Yurcor administrative overhead costs".  Yurcor administrative

18   costs consisted of the following items:

19

| Category | Amount |
|---|---:|
| Employer FICA | $401.27 |
| Employer FUTA | $31.47 |
| Employer SUI | $325.21 |
| Workers Compensation Deduction | $46.68 |

7

| Total | $804.63 |
|-------|---------|

Yurcor separately deducted employee payroll taxes totaling $1,985.16 and paid Mr. Wilson $5,245.34.

(j)    On October 14, 2011, Mr. Wilson received another Payroll Report detail from Yurcor for seven days in the total amount of $3,850.  From that amount, Yurcor deducted $412.85 for "Yurcor administrative overhead costs".  These costs consisted of:

| Category | Amount |
|----------|--------|
| Employer FICA | $262.94 |
| Employer FUTA | $10.53 |
| Employer SUI | $108.79 |
| Workers Compensation Deduction | $30.59 |
| **Total** | **$412.85** |

After deducting employee expenses of $1,170.02, Mr. Wilson received a check for $2,267.13.

(k)    Mr. Wilson's complaints about these deductions to The Mill were directed to Yurcor.  Yurcor's responses were purposeful confusion and misdirection.  On October 13, 2011, Yurcor sent Mr. Wilson an E-mail "explaining" that:

    "The rate that was offered to you from The Mill was a
    freelancer rate, not a direct hire rate. ... Again, as you

can seem the Yurcor employer of record service is very

similar to how you operated in your past 1099 work, but

what was done at the end of the year is now processed

per payroll."

(l)     In their Second Amended Complaint, class members seek to recover all wages owed to them on the contract or under law, penalties pursuant to California *Labor Code* §§2699(a) and 2699.3, and attorney's fees and costs pursuant to *Labor Code* §2699(g)(1).

(m)     The Complaint presents causes of action for willful misclassification as independent contractors pursuant to *Labor Code* §§226.8, 2753 and 2699; violation of *Labor Code* §201.5(b) providing that an employee engaged in the production or broadcasting of motion pictures whose employment terminated was entitled to receive payment of the wages earned and unpaid at the time of termination by the next regular payday; violation of *Labor Code* §221, which makes it unlawful for employers to utilize secret deductions to pay employees less than their stated wages; violation of *Labor Code* §223, which makes it unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or contract; violation of *Labor Code* §224, which makes it unlawful to withhold or divert a portion of employees' wages where employers were not required or empowered to do so by state or federal law; unfair business practices pursuant to California *Business and Professions Code* §17200; common law conversion.

9.     Starting in early January 2013, counsel for the parties commenced several discussions in preparation for the February 25, 2013 status conference, which was continued by the Court because the parties agreed to mediation to be held on March 14, 2013.  In approximately mid January 2013 Plaintiffs propounded discovery (that is, comprehensive requests for documents and

ID. #_____

DECLARATION OF ARTHUR GREBOW IN SUPPORT OF PLAINTIFFS' UNPPOPOSED MOTIONS FOR (1) CLASS CERTIFICATION AND (2) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   admissions, as well as interrogatories) to each Defendant, and the due date for

2   responses was later continued pending the results of the mediation.

3         10.    Prior to the mediation, I personally consulted with all of the named

4   Plaintiffs regarding acceptable parameters to each Plaintiff to tentatively agree

5   upon settlement terms, subject to Court approval.  Class Representatives were

6   aware that in preparation for the settlement negotiations, Plaintiffs' counsel were

7   thoroughly evaluating the merits of the case, including spending considerable time

8   reviewing and analyzing legal issues, as well as documents provided by Plaintiffs,

9   by other putative Class Members, and by Defendants.  On March 14, 2013,

10   Plaintiffs and Defendants participated in a full-day mediation of the disputes at

11   issue in this action before Lynn S. Frank, a veteran mediator, and reached a

12   tentative settlement of the action on such date.  The mediation spanned

13   approximately 13 hours on that date and negotiations were at arm's length.  All

14   Plaintiffs' counsel participated (SSDS and GR attorneys in person, and FDPK

15   attorneys by telephone).  Subsequently, on July 26, 2013, the Parties entered into a

16   formal *Amended* Settlement Agreement.  A key factor Plaintiffs considered in

17   agreeing to the settlement amount was that it was large enough that all Class

18   Members would receive all wages due (i.e., the alleged improperly deducted

19   "Yurcor Administrative Overhead Costs") ***and*** essentially an equal amount in

20   penalties, which Plaintiffs' counsel anticipate would be paid in just over one year

21   from the filing of the suit.

22         11.    Each of Plaintiffs Wilson and Servello spent approximately 8-10

23   hours meeting in person with Stuart Libicki on two separate occasions to discuss

24   the facts of the case.  Plaintiff Shwartz spent approximately three hours meeting

25   with Mr. Libicki personally.  Plaintiff Hoffman resides back east so their

26   conversations were strictly by phone and email.  Plaintiff Hoffman was added as a

27   named Plaintiff to avoid an issue raised by Defendants during the first early

28

10

1   meeting of counsel as to whether the other three Plaintiffs could adequately

2   represent those who were hired after December 31, 2012, when the law regarding

3   misclassification of employees as independent contractors took effect (California

4   Labor Code §§ 226.8 and 2753).  Once Mr. Hoffman was identified, the parties

5   stipulated to his addition as a named Plaintiff.  Each of the Plaintiffs separately

6   spent approximately two or more hours discussing the case with Mr. Libicki by

7   phone and email in addition to meetings.  Each of the Plaintiffs was prepared to be

8   deposed, provide responses to discovery, testify at trial and otherwise assist in the

9   prosecution of the case (e.g., by helping counsel locate and persuade others to be

10  witnesses as necessary and by obtaining additional documents).

11          12.    The terms of the proposed distribution of settlement funds, $1,350,000

12  are fully described in the Preliminary Approval Motions and in Section(s) C of the

13  Settlement Agreement.  To summarize, if approved by the court, the following

14  distribution will take place:

15          (a)    Each Class Member will be paid an amount (barring any correction

16  for errors) equal to the "Yurcor Administrative Overhead Costs" (i.e., what

17  amounted to employer payroll taxes) deducted from their checks for work

18  performed through March 14, 2013, which for all Class Members totals

19  $437,643.73.

20          (b)    Each Class Member will also be paid *an equal amount to all other*

21  *Class Members from the* waiting-time penalty portion of the Settlement Amount

22  projected to total approximately $537,*857 or approximately $2,600 per Class*

23  *Member*.  The 205 Class Memers will therefore receive a total of $*975,500* or

24  *72.2%* of the Settlement Amount.

25          (c)    Each named Plaintiff will be paid a Case Contribution Award of

26  $1,500 or a total of $6,000 for all four of them.

27

28

                                             11

1    (d)    The California Labor Workforce Development Agency will receive
2  $10,000.

3    (e)    The Settlement Administrator will receive an estimated $11,000 as the
4  final terms remain to be negotiated.

5    (f)    Plaintiffs' counsel will seek the balance of the settlement funds,
6  $337,500 for litigation expenses (approximately $10,000) and as attorney's fees,
7  subject to Court approval. *The parties* agreed *in the Amended Settlement*
8  *Agreement that Defendants would* not oppose Plaintiffs' motion if the fees did not
9  exceed 1/4 of the settlement funds, $337,500, which the *requested* fees do not.

10    13.    Plaintiffs and their counsel respectfully request the Court to certify the
11  Class and preliminarily approve the Settlement Agreement.  If the unopposed
12  motions are granted, the Court has already established the necessary dates for the
13  (1) notices to be given Class Members and Federal and State officials, (2) filing by
14  Plaintiffs of the motion for fees and costs, (3) objections and opt outs to be filed by
15  Class Members, (4) filing by Plaintiffs for their motion for final approval of the
16  Settlement Agreement, and (5) hearing on whether the Court will grant final
17  approval.

18    14.    Class Counsel's recommendation for the approval of the Settlement
19  Agreement is based on their joint and agreed assessment of the litigation risks,
20  which in turn is based on their collective experience with wage actions, the
21  California Labor Code, and class actions.  In addition, Plaintiffs will receive
22  double what they allegedly lost in wages in relatively prompt time.  Finally, it
23  should be noted that the balance of any greater monetary recovery by Plaintiffs
24  after trial (or summary judgment), if successful, would be limited to additional
25  penalty payments.

26

27

28

12

**COUNSEL'S EXPERIENCE WITH EMPLOYEE BENEFITS LITIGATION**

15.    Mr. Libicki received his J.D. Degree in 1973 from Berkeley Law at the University of California (Boalt Hall).  He has practiced law for over 39 years.  For that entire time, he has been primarily engaged in the practice of labor law representing unions and their members and Taft-Hartley trust funds.   He was lead and sole counsel on two wage and hour cases, which were resolved by litigation and settlement, respectively, in 1999-2000.  In those cases, his firm (SSDS) represented several hundred employees in opt-in class actions and recovered approximately $1 million in each case.  Mr. Libicki was also lead and essentially sole counsel in ACTWU et al., v. Murdock, et al., which was a representative ERISA action brought by six pension plan participants on behalf of all pension plan participants, which settled in 1990 for $1.75 million after a two-week trial before Judge Irving Hill, following a successful appeal to the Ninth Circuit. SSDS's resume is attached hereto as Exhibit B, which includes a section describing his background and a more detailed description of the aforementioned cases. SSDS served among class counsel in an action brought by writers against the motion picture and television industries and agents, which settled in 2010, for approximately $80 million.

Attached hereto as Exhibits C, D and E are the resumes of myself and William Payne and Pamina Ewing of FDPK. I have over 45 years of experience as a litigator in Federal and California state courts and have defended a number of class actions.  Mr. Libicki and I have a successful history of working together on cases.  Mr. Payne – Mr. Libicki's former law partner -- was associated as counsel because of his firm's expertise a plaintiffs' counsel in class actions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/////

13

Executed on July 26, 2013 at Encino, California.



ARTHUR GREBOW

14

# EXHIBIT "A"

15

STUART LIBICKI (SBN 57626)
SCHWARTZ, STEINSAPIR,
 DOHRMANN & SOMMERS LLP
6300 Wilshire Boulevard, Suite 2000
Los Angeles, California 90048-5268
Phone: (323) 655-4700
Fax: (323) 655-4488
sl@ssdslaw.com

WILLIAM T. PAYNE (SBN 90988)
PAMINA EWING (PA Bar #59244)
FEINSTEIN DOYLE
 PAYNE & KRAVEC, LLC
429 Forbes Avenue, 17th floor
Pittsburgh, PA  15219
Phone: (412) 281-8400
Fax: (412) 281-1007
wpayne@stemberfeinstein.com
pewing@stemberfeinstein.com

ARTHUR GREBOW (SBN 41374)
GREBOW & RUBIN, LLP
16133 Ventura Boulevard, Suite 260
Encino, CA  91436
Phone: (818) 783-1100
Fax: (818) 783-1103
agrebow@grebowrubinlaw.com

Attorneys for Plaintiffs Nathaniel
Wilson, David Shwartz, Richard
Servello and Tim Hoffman, on behalf
of themselves and all others similarly
situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| NATHANIEL WILSON, DAVID SHWARTZ, and RICHARD SERVELLO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>THE MILL GROUP INC., et al.<br><br>Defendants. | CASE NO. 2:12-CV-10214-SVW-MAN<br><br>AMENDED SETTLEMENT AGREEMENT<br><br>Hon. Stephen V. Wilson<br>Courtroom 6 |

1                                    **SETTLEMENT AGREEMENT**

The undersigned parties (collectively the "Parties" and each separately a "Party") to the above-captioned action (the "Action"), by and through their attorneys, have entered into this Amended Settlement Agreement (the "Agreement"), subject to the approval of this Court, which replaces and supersedes the Settlement Agreement executed in this matter on June 28, 2013:

**1.    RECITALS**

This Agreement, including its attached Exhibits, is entered into by and among Plaintiffs, on behalf of themselves and on behalf of each of the Settlement Class Members, and Defendants The Mill Group, Inc. ("the Mill") and The Churchill Benefit Corporation, dba Yurcor ("Yurcor"). Capitalized terms used herein are defined in Section II herein or indicated in parentheses elsewhere in the Agreement. Subject to Court approval as required by the applicable Federal Rules of Civil Procedure, and as provided herein, the Parties hereby stipulate and agree that, in consideration for the promises and covenants set forth in the Agreement and upon the entry by the Court of a Final Judgment and Order Approving Settlement and the occurrence of the Effective Date, the Action shall be settled and compromised upon the terms and conditions contained herein.

WHEREAS, The Mill is a production company, located in Los Angeles, that develops and creates visual effects for the broadcasting of commercial advertisements, film and television;

WHEREAS, Yurcor is a self-described "provider of human resource services" which provided an "employer of record" payroll services arrangement pursuant to a contract with The Mill;

WHEREAS, Class Members performed temporary services for The Mill as employees that were hired by Yurcor as their "employer of record";

WHEREAS, on September 14, 2012, Plaintiffs filed a Class Action against The Mill and Yurcor in Los Angeles County Superior Court as Case No. BC492168 alleging that Defendants The Mill and Yurcor, as joint employers,

17

1   unlawfully failed to pay the Class Members' full wages and/or improperly
2   misclassified Class Members as independent contractors;

3        WHEREAS, on November 29, 2012, Defendants The Mill and Yurcor
4   removed such action to the United States District Court, Central District of
5   California;

6        WHEREAS, on February 13, 2013, Plaintiffs filed a Second Amended Class
7   Action Complaint ("the Complaint") in the United States District Court of the
8   Central District of California, entitled Nathaniel Wilson, et al. v. The Mill Group,
9   Inc., et al., Case No. 2:12-CV-10214-SVW-MAN ("the Action") seeking to certify
10  a class of members who performed their artists services for The Mill and were
11  compensated by Yurcor;

12       WHEREAS, on March 14, 2013, Plaintiffs and Defendants participated in a
13  full-day mediation of the disputes at issue in this Action before Lynn S. Frank and
14  reached a tentative settlement of the Action on such date;

15       WHEREAS, Plaintiffs are members of the proposed Class alleged in the
16  Action;

17       WHEREAS, Plaintiffs and the proposed Class are represented by Schwartz,
18  Steinsapir, Dohrmann & Sommers LLP, Feinstein Doyle Payne & Kravec, LLC,
19  and Grebow & Rubin, LLP (collectively "Class Counsel");

20       WHEREAS, Class Counsel have conducted an examination and
21  investigation of the facts and law relating to the matters set forth in the Action and
22  have also interviewed witnesses and documents;

23       WHEREAS, Plaintiffs and Class Counsel believe that the claims asserted in
24  the Action have merit; however, taking into account the extensive burdens and
25  expense of litigation, including the risks and uncertainties associated with
26  protracted trials and appeals, as well as the fair, cost-effective and assured method
27  of resolving the claims of the Settlement Class, Class Counsel and Plaintiffs have
28  concluded that this Agreement provides substantial benefits to the Settlement

                                    3                        **SETTLEMENT AGREEMENT**

1  Class, and is fair, reasonable, adequate, and in the best interests of Plaintiffs and
2  the Settlement Class;

3  WHEREAS, although The Mill and Yurcor deny that the Action is suitable
4  for class certification treatment (other than for purposes of a settlement class) and
5  further deny the liability alleged by Plaintiffs, The Mill and Yurcor also have taken
6  into account the uncertainty, risk, and delay inherent in litigation and agreed to
7  enter into the Agreement to avoid further litigation expense and inconvenience,
8  and to remove the distraction of burdensome and protracted litigation;

9  WHEREAS, it is the intention and desire of the Plaintiffs and The Mill and
10  Yurcor to compromise, resolve, dismiss and release all allegations and claims for
11  damages or other relief, through the date of Preliminary Approval, that (1) are set
12  forth in the Complaint and/or that have been or could have been brought against
13  The Mill, Yurcor or their Released Parties, or any of them, in the Action and in any
14  action filed, litigation pending or claim pursued by any Person or entity who is a
15  member of the Settlement Class, arising from or relating to the facts alleged in the
16  Complaint and (2) arise from or are related to the facts alleged in the Complaint
17  that could have been brought against the named Plaintiffs;

18  NOW, THEREFORE, the Agreement is entered into by and among the
19  Parties, by and through their respective counsel and representatives, and the Parties
20  agree that: (a) upon approval of the Court after the hearing(s) provided for in the
21  Agreement, the Action and all Released Claims shall be settled and compromised
22  as between Plaintiffs and the Settlement Class on the one hand, and The Mill and
23  Yurcor on the other hand; and (b) upon Court approval of the Agreement, the
24  [Proposed] Final Judgment and [Proposed] Order Approving Settlement,
25  substantially in the form attached as Exhibit 1 hereto, shall be entered dismissing
26  the Action with prejudice and releasing all Released Claims, as defined herein,
27  against The Mill and Yurcor and all Released Parties, all on the following terms
28  and conditions:

4                                    SETTLEMENT AGREEMENT

1  **1.    DEFINITIONS**

2          As used in the Agreement and the Exhibits hereto, in addition to any

3  definitions elsewhere in the Agreement, the following terms shall have the

4  meanings set forth herein:

5          1.    "Action" means *Nathaniel Wilson, et al. v. The Mill Group, Inc., et*

6  *al.*, Case No. 2:12-CV-10214-SVW-MAN (C.D. Cal.).

7          2.    "Agreement" means this Settlement Agreement (including all Exhibits

8  attached hereto).

9          3.    "Award" means the monetary relief obtained by Settlement Class

10 Members pursuant to Section 3(C)(1) of this Agreement.

11         4.    "Attorneys' Fees and Expenses" means such funds as may be awarded

12 by the Court to Class Counsel as set forth herein to compensate them for their fees

13 and expenses in connection therewith, as described more particularly in Section 7

14 of this Agreement.

15         5.    "Class Member" means an individual member of the Settlement Class

16 identified in Exhibit 2 hereto, all of whom are included in the description of the

17 "Class" as set forth herein.

18         6.    "Claims Administration Expenses" means the expenses incurred by

19 the Claims Administrator in administering the Notice Program and processing all

20 payments to Settlement Class Members and the California Labor Workforce

21 Development Agency.

22         7.    "Claims Administrator" means the third-party administrator selected

23 jointly by the Parties, CPT Group, Inc.

24         8.    "Class Notice" or "Notice" means the form of notice to be

25 disseminated to Settlement Class Members informing them about the Settlement.

26 A copy of the proposed Notice is attached in the form of Exhibit 3 hereto.

27         9.    "Class Representatives" means Plaintiffs Nathaniel Wilson, David

28 Shwartz, Richard Servello, and Tim Hoffman.

5                                    **SETTLEMENT AGREEMENT**

1        10.   "Class Counsel" means the law firms of Schwartz, Steinsapir,

2  Dohrmann & Sommers LLP, Feinstein Doyle Payne & Kravec, LLC and Grebow

3  & Rubin, LLP.

4        11.   "Complaint" means the Second Amended Complaint filed by

5  Plaintiffs on February 13, 2013 in the Action.

6        12.   "Court" means the United States District Court for the Central District

7  of California, the Honorable Stephen V. Wilson presiding.

8        13.   "Defendants" means The Mill and Yurcor, and includes, without

9  limitation, all related entities including but not limited to parents, subsidiaries,

10  agents, employees and assigns, predecessors, successors and affiliates.

11        14.   "Effective Date" means either: (a) the date thirty-five (35) days after

12  the entry of the Final Judgment and Order Approving Settlement, if no timely

13  motions for reconsideration and/or no appeals or other efforts to obtain review

14  have been filed; or (b) in the event that an appeal or other effort to obtain review

15  has been initiated, the date thirty-five (35) days after such appeal or other review

16  has been finally concluded and is no longer subject to review, whether by appeal,

17  petitions for rehearing en banc, petitions for writ of certiorari, or otherwise.

18        15.   "Final Approval Hearing" means the hearing to be conducted by the

19  Court on such date as the Court may order to determine the fairness, adequacy and

20  reasonableness of the Settlement in accordance with applicable jurisprudence.

21        16.   "Final Judgment and Order Approving Settlement" means the final

22  Judgment and Order Approving Settlement to be entered by the court, substantially

23  in the form of Exhibit 1 and conforming to Section 9 herein, approving the

24  Settlement as fair, adequate and reasonable, confirming the certification of the

25  Settlement Class for purposes of the Settlement only, and issuing such other

26  findings and determinations as the Court and/or the Parties deem necessary and

27  appropriate to implement the Settlement.

28

6

**SETTLEMENT AGREEMENT**

21

17.   "Motion for Preliminary Approval of Settlement" means the motion, to be filed by Plaintiffs, for Preliminary Approval of this Agreement and includes all supporting papers including the Motion for Class Certification.

18.   "Notice Expenses" means the reasonable costs and expenses incurred in connection with preparing, printing, mailing, disseminating, posting, emailing, internet hosting and for publishing the class Notice, and all other aspects of administering the Notice Program.

19.   "Notice Date" means no later than 45 days after the Court enters an order granting Preliminary Approval of this Settlement.  Notice shall be made in accordance with the Notice Program described in Section 5 below.

20.   "Opt Out" means the date, to be set by the Court, by which a Request for Exclusion from the Class must be filed with the Claims Administrator in order for a Settlement Class Member to be excluded from the Settlement Class.

21.   "Objection Date" means the date by which Settlement Class Members must file objections, if any, to the Settlement in accordance with Section 6(1) herein.

22.   "Plaintiffs" means Plaintiffs Nathaniel Wilson, David Shwartz, Richard Servello and Tim Hoffman.

23.   "Preliminary Approval" means the initial approval of settlement issued by the Court pursuant to an order, substantially in the form of Exhibit 4 and conforming to Sections 3(A) and 3(B) herein, conditionally certifying the Settlement Class, preliminarily approving the Settlement, setting the date of the final Approval Hearing, appointing Class Counsel as Counsel for the Settlement Class, approving the Notice Program and Class Notice, and setting dates for the Claims Deadline, Opt Out and Objection Date, and Notice Date.

24.   "Request for Exclusion" means the written communication that must be filed with the Claims Administrator and postmarked on or before the Opt Out

7                          **SETTLEMENT AGREEMENT**

1   and Objection Date by a Settlement Class Member who wishes to be excluded

2   from the Settlement Class.

3        25.   "Restitution" means the total compensation paid to Settlement Class

4   Members in satisfaction of their Claims.

5        26.   "Settlement" means the terms and conditions of this Agreement.

6        27.   "Settlement Class" and "Settlement Class Member(s)" each means all

7   individuals who at any time on or after September 14, 2009 and at any time up to

8   and including March 14, 2013 worked or performed and completed services in

9   California for The Mill in the pre-production, production or post-production

10  processes of motion pictures, television programs, advertising, game art or other

11  visual content, as to whom Yurcor performed services for The Mill and/or the

12  respective individual (for example, payroll processing services, "employer of

13  record" services or "Yurcor's third-party payroll services program").

14       28.   "Settlement Consideration" means the consideration exchanged by

15  and between The Mill, Yurcor and the Settlement Class, as set forth in this

16  Agreement.

17  **2.    TERMS AND CONDITIONS**

18       **A.    Conditional Class Certification For Settlement Purposes Only**

19            1.    This Agreement is for settlement purposes only, and neither the

20  fact of, nor any provision contained in this Agreement or its Exhibits, nor any

21  action taken hereunder, shall constitute, be construed as, or be admissible in

22  evidence as an admission of: (a) the validity of any claim or allegation by

23  Plaintiffs, or of any defense asserted by the Defendants, in the Action or any other

24  action or proceeding; or (b) any wrongdoing, fault, violation of law, or liability of

25  any kind on the part of any Party, Released Party, Settlement Class Member or

26  their respective counsel.

27            2.    As part of their Motions for Preliminary Approval of

28  Settlement, Plaintiffs will seek certification of the Class.  The Class sought to be

8                           **SETTLEMENT AGREEMENT**

23

1   certified by Plaintiffs shall be certified for settlement purposes only, and shall be

2   defined as:  All individuals who at any time on or after September 14, 2009 and up

3   to and including March 14, 2013 worked or performed and completed services in

4   California for The Mill in the pre-production, production or post-production

5   processes of motion pictures, television programs advertising, game art or other

6   visual content, as to whom Yurcor performed services for The Mill and/or the

7   respective individual (for example, payroll processing services, "Employer of

8   Record" services or "Yurcor's third party payroll services program").

9          3.      Subject to Court approval and for settlement purposes only,

10  Plaintiffs Nathaniel Wilson, David Shwartz, Richard Servello and Tim Hoffman

11  will be appointed Class Representatives and their counsel, Schwartz, Steinsapir,

12  Dohrmann & Sommers LLP, Feinstein Doyle Payne & Kravec, LLC and Grebow

13  & Rubin, LLP, will be appointed Class Counsel for the Settlement Class.

14         4.      This Agreement is without prejudice to the rights of each

15  Releasing Party and each Released Party (as defined below) to: (a) seek or oppose

16  class certification in the Action should the Agreement not be finally approved or

17  implemented for any reason; or (b) seek or oppose class certification in any other

18  action (unless barred by the Releases).

19      **B.    Required Events and Cooperation by The Parties**

20          1.      Preliminary Approval

21      The Settling Parties and their respective counsel agree that Plaintiffs shall

22  seek Preliminary and Final Approval of the Settlement as described herein.  As

23  soon as reasonably practicable after execution of the Agreement, Plaintiffs shall

24  submit, and Defendants shall not oppose, Motions for Class Certification and

25  Preliminary Approval, which shall include this Agreement, including all Exhibits,

26  and shall seek an order of Preliminary Approval from the Court, substantially in

27  the form of Exhibit 4 hereto, which, by its terms shall:

28

9

**SETTLEMENT AGREEMENT**

1          a.      Determine preliminarily that this Agreement and the

2    Settlement set forth herein fall within the range of reasonableness meriting possible

3    final approval and dissemination of Notice to the Settlement Class;

4          b.      Determine preliminarily that the Class Representatives

5    are members of the Settlement Class and that, for purposes of the Settlement,

6    satisfy the requirements of typicality, and that they adequately represent the

7    interests of the Settlement Class Members, and appoint them as the representatives

8    of the Settlement Class;

9          c.      Determine preliminarily that the Settlement Class meets

10   all applicable requirements of Fed.R.Civ.P. 23 ("Rule 23"), and conditionally

11   certify the Settlement Class for purposes of the Agreement under Rule 23 for

12   settlement purposes only;

13         d.      Appoint Schwartz, Steinsapir, Dohrmann & Sommers

14   LLP, Feinstein Doyle Payne & Kravec, LLC and Grebow & Rubin, LLP, as Class

15   Counsel pursuant to Rule 23(g);

16         e.      To the extent not already done so, schedule the Final

17   Approval Hearing to: (i) determine finally whether the Settlement Class satisfies

18   the applicable requirements of Rule 23 and should be finally certified for

19   settlement purposes only; (ii) review objections, if any, regarding the Agreement;

20   (iii) consider the fairness, reasonableness and adequacy of the Settlement; (iv)

21   consider Class Counsel's application for an award of attorneys' fees and

22   reimbursement of expenses consistent with the stipulation of the Parties set forth

23   herein; (v) determine the validity of Requests for Exclusion and exclude from the

24   Settlement Class those Persons who validly and timely opt out; and (vi) consider

25   whether the Court shall issue the final Judgment and Order Approving Settlement

26   approving the Settlement and dismissing the Action with prejudice;

27         f.      To the extent not already done so, set a briefing schedule

28   for the Final Approval Hearing;

SETTLEMENT AGREEMENT

g.      Approve the proposed Class Notice and Notice Program;

h.      Direct The Mill and Yurcor, the Claims Administrator, or their designee(s) to cause the Class Notice to be disseminated in the manner set forth in the Notice Program on or before the Notice Date;

i.      Determine that the Class Notice and the Notice Program: (i) meets the requirements of Rule 23(c)(3) and due process; (ii) is the best practicable notice under the circumstances; (iii) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the action and their right to object to the proposed Settlement or opt out of the Settlement Class; and (iv) is reasonable and constitutes due, adequate and sufficient notice to all those entitled to receive notice;

j.      Require each Settlement Class Member who wishes to opt out of the Settlement Class to submit a timely written Request for Exclusion, on or before the Opt Out and Objection Date, as specified in Section 6.2 herein;

k.      Rule that any Settlement Class Member who does not submit a timely written Request for Exclusion will be bound by all proceedings, orders and judgments in the Action;

l.      Require any Settlement Class Member who wishes to object to the fairness, reasonableness or adequacy of the Agreement or to the award of attorneys' fees, costs and expenses, to deliver to Class Counsel and The Mill and Yurcor's Counsel and to file with the court, by the Opt Out and Objection Date, a statement of his or her membership in the Class, a statement of his or her objection, as well as the specific reason, if any, for each objection, including any legal support the Settlement Class Member wishes to bring to the Court's attention and any evidence the Settlement Class Member wishes to introduce in support of his or her objection, and to state whether the Settlement Class Member and/or his or her counsel wishes to make an appearance at the Final Approval Hearing, or be forever barred from separately objecting; and

11                          SETTLEMENT AGREEMENT

2.      Cooperation

The Parties acknowledge that each intends to implement the Settlement. The Parties shall, in good faith, cooperate and assist with and undertake all reasonable actions and steps in order to accomplish all required events on the schedule set by the Court, and shall use their best efforts to implement all terms and conditions of the Agreement.

**C.      Settlement Consideration**

**(1)      Settlement Payment**

The Mill and Yurcor shall pay a settlement amount for all Claims for unpaid wages, deductions, penalties, attorneys' fees, costs, expenses, Settlement administration expenses, damages, restitution, interest and equitable relief in the sum of One Million Three Hundred Fifty Thousand Dollars ($1,350,000.00) ("Settlement Amount").

**(2)      Monetary Relief For Settlement Class Members**

Settlement Class Members who comply with the conditions and requirements specified herein (including not opting out) shall have the right to obtain relief from the Settlement Amount, as detailed below:

a.      Net Funds Available for Settlement means the Settlement Amount set forth in subparagraph a above, less (1) case contribution awards to the Class Representatives as approved by the Court; (2) the amount of attorneys' fees and litigation costs awarded to Class Counsel by the Court; and (3) administration costs.

b.      Settlement Class Members (not opting out) shall be reimbursed the "Disputed Payroll Deductions" (that is, the respective deductions from Class Members' pay, which would be equivalent in each case to the amount that would otherwise have been paid for the payment of employer payroll taxes) which amounts are identified in Exhibit 2. These are the amounts that are claimed due to each Class Member as wages.  Class Counsel may modify the amounts to

12                      **SETTLEMENT AGREEMENT**

1   correct any errors discovered after the date of execution of this Agreement by

2   jointly filing a revised Exhibit 2 with the Court. Thus, subject to Court approval

3   and before (and not after) distribution of Class Settlement Payments, Exhibit 2 may

4   be modified to correct errors, thus adjusting the specific amount of each Class

5   Member's "Disputed Payroll Deductions." In no event will such a correction cause

6   any sums to be paid by The Mill or Yurcor in excess of the Settlement Amount.

7           c.     The California Labor Workforce Development Agency

8   shall be paid the sum of $10,000.00 from the Settlement Amount.

9           d.     Settlement Class Members (not opting out) shall each be

10  paid a waiting-time penalty portion from the Settlement Amount, calculated by

11  dividing the remaining portion of the Net Funds Available for Settlement evenly

12  amongst the entire class per Class Member.

13          e.     Each of the four Class Representatives shall receive case

14  contribution awards from the Settlement Amount in the amount of $1,500.00

15  (totaling $6,000.00) subject to Court approval.

16      "Disputed Payroll Deductions" will be considered the wage portion of each

17  Settlement award to each eligible Class Member with appropriate standard

18  employee payroll deductions therefrom and shall be reported by Yurcor on an IRS

19  Form W-2. The remaining portion awarded to each eligible Class Member shall be

20  reported on an IRS Form 1099 and characterized as penalties. Eligible Class

21  Members shall be solely and legally responsible to pay all applicable employee

22  taxes. Defendants shall provide the Claims Administrator with a payroll check and

23  penalty check for each Class Member from the Settlement Amount for distribution

24  within five (5) business days after the Effective Date.

25      Restitution (wage and penalty checks) shall be forwarded by the Claims

26  Administrator to Settlement Class Members within 10 days of receipt from

27  Defendants. All checks issued under this Paragraph shall state on their face that

28  they must be cashed within 90 days from the date issued or they will become void.

28

1   The amount of any checks that are not cashed within 90 days from the date issued
2   or that are returned to the Claims Administrator as undeliverable, after mailing to
3   the Settlement Class Member at the address provided by the Defendants, will cease
4   to be the property of those Settlement Class Members.  Within 10 days of the
5   expiration of said 90 day period, (1) the Claims Administrator shall notify the
6   Parties' Counsel of the name of each Class Members for whom checks were
7   returned as undeliverable and the respective amount; and (2) Defendants shall
8   determine the name of each Class Member who did not cash his/her check even
9   though it was not returned and notify Plaintiffs' Counsel.

10                    f.      The Settlement Agreement does not contain any
11   reversion provisions because there is no opt-in procedure and all Class Members
12   will receive a settlement payment unless they opt out.  Within 60 days of the
13   expiration of the 90 day period set forth in Section C(2)e, the Claims Administrator
14   will immediately issue a check for one-third of the amount of any checks that have
15   not been cashed as of that date to The Mill, one-third to Yurcor and one-third to the
16   Public Interest Law Foundation at USC Gould School of Law in Los Angeles.

17   **3.      SETTLEMENT BENEFITS AND PAYMENTS**
18          A.     In exchange for the Releases set forth in Section 6, and subject to all
19   of the terms of this Settlement Agreement, Defendants agree to pay each Class
20   Member not opting out or, if appropriate, such Class Member's Successor, a Class
21   Member Settlement Payment described in Section 2 from the Settlement Amount.
22          B.     **Class Member Settlement Payment.**  The Class Member Settlement
23   Payment for each Class Member shall be determined as follows:
24                 1.      Each Class Member not opting out shall receive a share of the
25   net funds available for Settlement calculated by payment of the "Administrative
26   Overhead Costs" deducted by Yurcor for services performed at The Mill during the
27   period on or after September 14, 2009 to and including March 14, 2013 (See
28   Exhibit 2), and an additional payment (by a second check without payroll

14                              **SETTLEMENT AGREEMENT**

29

1  deductions) as waiting-time penalties, with the latter to be distributed evenly

2  amongst the entire class per Class Member ("Disputed Payroll Deductions").

3       2.     The amounts due to each Class Member under Section 4.2(a)

4  are shown in Exhibit 2 hereto.  Exhibit 2 identifies the individuals who, according

5  to Defendants' records, are all the members of the Settlement Class.  Class Counsel

6  may modify the proposed apportionment to correct any errors discovered after the

7  Execution Date by filing a revised Exhibit 2 with the Court.  Thus, subject to Court

8  approval and before (and not after) distribution of Class Settlement Payments,

9  Exhibit 2 may be modified to correct errors, thus adjusting Class Member

10  Settlement Payments.

11       C.     **Notice to Class Members of Amount of Settlement Payment.**

12  Within 60 days following the Effective Date, Class Administrator shall send each

13  Class Member the amount of his or her Class Member Settlement Payment (in two

14  checks) to the last known address of each known Class Member as it appears in

15  Defendants' records.

16       D.     **Withholding for Income Tax.**  Each Class Member Settlement

17  Payment for "Disputed Payroll Deductions" shall be subject to withholding for

18  income tax to the extent that such withholding for income tax is required by law.

19  No withholding shall be taken from the waiting-time penalty portion check of the

20  Settlement payment.

21       E.     **Payees for Class Member Benefits.**  In the event that a Class

22  Member is deceased, the Claims Administrator shall pay such Class Member's

23  Settlement Payment to the Class Member's Successor in accordance with

24  California law.

25       F.     **Lost Class Members.**  If the Claims Administrator cannot ascertain

26  the whereabouts of any Class Member and the check cannot therefore be provided

27  to or cashed by the Class Member, such Class Member's Settlement Payment shall

28  be treated as provided in Section C(2)(f).

          **SETTLEMENT AGREEMENT**

30

4.     **NOTICE TO THE SETTLEMENT CLASS**

A.     On or before September 23, 2013, if the Court has entered an order granting Preliminary Approval, the Class Counsel shall cause the Class Notice to be disseminated to potential Settlement Class Members as provided herein ("Notice Date").

B.     Notice Program.

1.     The Class Notice: The Class Notice shall be in substantially the form of Exhibit 3, attached hereto. At a minimum, the class Notice shall include:

a.     a short, plain statement of the background of the Action and the proposed Settlement;

b.     describe the proposed Settlement relief as set forth in this Agreement;

c.     inform Settlement Class Members that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive relief;

d.     describe the procedures for participating in the Settlement including all applicable deadlines and advise Settlement Class Members of their rights, including their right to opt out of the Class or object to the Settlement;

e.     explain the scope of the Release and the impact of the proposed Settlement on any existing litigation, arbitration or other proceeding;

f.     state that any Award to Settlement Class Members under the Settlement is contingent on the Court's final approval of the proposed Settlement;

g.     the identity of Class Counsel and the amount sought in attorneys' fees and costs;

h.     explain that Counsel for the Parties may not advise on the tax consequences of participating or not participating in the Settlement;

        **SETTLEMENT AGREEMENT**

1              i.      explain the procedures for opting out of the Settlement

2  including the applicable deadline for opting out as well as the consequences of

3  opting out; and

4              j.      explain the procedures for objecting to the Settlement

5  including applicable deadlines, including that any papers submitted in support of

6  said objection will be considered only if the Settlement Class Member making an

7  objection has filed timely notice of his or her intention to do so, with the grounds

8  for the objection and a statement of his or her membership in the Class, and has

9  filed copies of such papers he or she proposes to submit at the Final Approval

10  Hearing with the Clerk of the Court and served copies of such papers on Class

11  Counsel and The Mill and Yurcor's Counsel on or before the Opt Out and

12  Objection Date, as approved by the Court and specified in the Class Notice.

13          2.      Direct Mail Notice:  The Claims Administrator shall mail the

14  Notice to those Settlement Class Members for whom The Mill or Yurcor can

15  provide either a U.S. Postal address or an e-mail address.

16          3.      The Class Administrator shall provide the Court with

17  documentation showing and an affidavit attesting that Notice was effected pursuant

18  to the Notice Program.

19  **5.      OBJECTIONS AN REQUESTS FOR EXCLUSION**

20      **A.      Objections**

21      Any Settlement Class Member who intends to object to the fairness of the

22  Settlement must do so no later than November 8, 2013.  In order to object, the

23  Settlement Class Member must file with the Court, and provide a copy to Class

24  Counsel and The Mill and Yurcor's Counsel a document that includes the

25  following:  (a) the name, address, telephone number and e-mail address of the

26  Person objecting and, if represented by counsel, of his/her counsel; (b) specifically

27  and in writing, all objections; (c) whether he/she intends to appear at the Final

28  Approval Hearing, either with or without counsel; and (d) if not included on

17                      **SETTLEMENT AGREEMENT**

1  Exhibit 2 or if the amounts on Exhibit 2 are believed by him/her to be incorrect, a

2  statement explaining the basis of his/her membership in the Class and/or for the

3  correction as to the amount due him/her.  Any Settlement Class Member who fails

4  to file and serve timely a written objection and notice of his or her intent to appear

5  at the Final Approval Hearing pursuant to this Section shall not waive any

6  objection, shall be permitted to object to the approval of the Settlement at the Final

7  Approval Hearing and shall be foreclosed from seeking any review of the

8  Settlement or the terms of the Agreement by appeal or other means, unless given

9  special permission by the Court.

10      **B.**    **Requests For Exclusion**

11          1.      Any member of the Class may request to be excluded (or "opt

12  out") from the Settlement Class.  A Settlement Class Member who wishes to opt

13  out of the Settlement Class must do so no later than November 8, 2013.  In order to

14  opt out, a Settlement Class Member must complete and send to the Claims

15  Administrator a Request For Exclusion that is post-marked no later than the Opt

16  Out and Objection Date.  The Request for Exclusion must be personally signed by

17  the Settlement Class Member requesting exclusion and contain a statement that

18  indicates a desire to be excluded from the Settlement Class.  So-called "mass" or

19  "class" opt-outs shall not be allowed.  Plaintiffs shall not opt-out.

20          2.      Except for those Settlement Class Members who timely and

21  properly file a Request for Exclusion, all other Settlement Class Members will be

22  deemed to be Settlement Class Members for all purposes under the Agreement, and

23  upon the effective Date, will be bound by its terms, regardless of whether they file

24  a Claim or receive any monetary relief.

25          3.      Any Settlement Class Member who properly requests to be

26  excluded from the Settlement Class shall not:  (a) be bound by any orders or

27  judgments entered in the Action relating to the Settlement; (b) be entitled to relief

28

18                          **SETTLEMENT AGREEMENT**

*33*

1   under, or be affected by, the Agreement; (c) gain any rights by virtue of the

2   Agreement; or (d) be entitled to object to any aspect of the Settlement.

3        4.      If more than 5% of the Settlement Class Members timely opts-

4   out, either The Mill or Yurcor may withdraw from this settlement, in which case

5   the Agreement will be deemed terminated as provided in Section 11 of this

6   Agreement.  Any such right must be exercised within 14 days after the time for

7   opting out has expired and shall be communicated in writing to each of the other

8   parties.

9   **6.     RELEASES**

10       The Agreement shall be the sole and exclusive remedy for any and all

11  Released Claims of all Releasing Parties against all Released Parties.  No Released

12  Party shall be subject to liability or expense of any kind to any Releasing Party

13  with respect to any Released Claim.  Upon entry of the Final Judgment and Order

14  Approving Settlement, each and every Releasing Party shall be permanently barred

15  and enjoined from initiating, asserting, and/or prosecuting any Released Claim

16  against any Released Party in any court or any forum.

17       1.      The following terms have the meanings set forth herein:

18            a.      "Released Claim" means any individual, class, representative,

19  group or collective claim, liability, right, demand, suit, matter, obligation, damage,

20  loss, action or cause of action, of every kind and description that a Releasing Party

21  has or may have, including assigned claims, whether known or unknown (as

22  defined below), asserted or unasserted, latent or patent, that is, has been, could

23  reasonably have been or in the future might reasonably be asserted under any body

24  of law by the Releasing Party either in a court or any other judicial or other forum,

25  regardless of legal theory or relief claimed, and regardless of the type or relief or

26  amount of damages claimed, against any of the Released parties arising from, or in

27  any way relating to, the Claims asserted in the Complaint (and including, but not

28  limited to, claimed violations of any of the statutory provisions cited in the

34

1   Complaint) covering the period up to and including the date of Preliminary

2   Approval.  For purposes of this Agreement, the term "Unknown Claim" means any

3   and all Released Claims that any Party, or anyone acting on behalf of or in their

4   interest, does not know or suspect to exist against any of the Released Parties

5   which, if known, might have affected his or her or its decision regarding the

6   settlement of this Action.  The Parties further acknowledge that they may hereafter

7   discovery facts in addition to or different from those that they now know or believe

8   to be true concerning the subject matter of this release, but nevertheless fully,

9   finally and forever settle and release all Released Claims, known or unknown,

10  suspected or unsuspected, contingent or non-contingent, which now exist, may

11  hereafter exist, or heretofore have existed based upon actions, conduct, events or

12  transactions occurring on or before the date of this Agreement, without regard to

13  subsequent discovery or the existence of such different or additional facts

14  concerning each of the Released Parties.

15          b.     "Released Party" means The Mill, Yurcor, and each of their

16  affiliated companies, affiliates, officers, directors, representatives and agents.

17          c.     "Releasing Party" means each Plaintiff, each Settlement Class

18  Member and any Person claiming by or through each Settlement Class Member,

19  including but not limited to, spouses, children, wards, heirs, devisees, legatees,

20  incites, employees, associates, co-owners, attorneys, agents, administrators,

21  predecessors, successors, assignees, representatives of any kind, shareholders,

22  partners, directors, or affiliates.

23      2.     Upon entry of the Final Judgment and Order Approving Settlement,

24  each Releasing Party shall be deemed to have released and forever discharged each

25  Released Party of and from any and all liability for any and all Released Claims.

26      3.     With respect to any and all Released Claims, and upon entry of the

27  Final Judgment and Order Approving Settlement without further action, for good

28  and valuable consideration, the Parties, including Plaintiffs, on behalf of

20                          **SETTLEMENT AGREEMENT**

35

themselves and the Settlement Class and as the representatives of the Settlement Class, shall expressly and by operation of the final Judgment and Order Approving Settlement shall, to the fullest extent permitted by law, fully, finally, and forever expressly waived and relinquished with respect to the Released Claims, any and all provisions, rights, and benefits of Section 1542 of the California *Civil Code* and any and all similar provisions, rights, and benefits conferred by any law of any state or territory of the United States or principle of common law that is similar, comparable, or equivalent to Section 1542 of the California *Civil Code*, which provides:

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

4.      Except as to the rights and obligations provided for under this Agreement, each Party and its attorneys and all of their respective past, present and future predecessors, successors, assigns, devisees, relatives, heirs, legatees, and agents, including their respective past, present and future predecessors successors, assigns, devisees, relatives, heirs, legatees, and agents hereby release and forever discharge the other Parties and their attorneys for any and all charges, complaints, claims, debts, liabilities, demands, obligations, costs, expenses, actions and causes of action of every nature, character, and description, whether known or unknown, asserted or unasserted, suspected or unsuspected, fixed or contingent, which each Party may now have, own or hold or which Defendants at any time may have, own or hold, against the Plaintiffs, their attorneys by reason of any matter, cause or thing whatsoever occurred, done, omitted or suffered from the beginning of time to the Preliminary Approval Date.

5.      The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Parties, Settlement Class Members, and the claims

36

1  Administrator to interpret and enforce the terms, conditions, and obligations under

2  the Agreement.

3  **7.    COUNSEL FEES AND COSTS**

4       Class Counsel agree to make, and The Mill and Yurcor agree not to oppose,

5  an application for the award of Attorneys' Fees in this Action in an amount not to

6  exceed twenty-five percent (25%) of the Settlement Amount plus expenses to be

7  paid from the Settlement Amount.  Class Counsel shall not request any additional

8  fees or costs above this amount. Class Counsel's initial motion and brief

9  supporting its fee request shall be filed with the Court at least six weeks before the

10 Final Approval Hearing (or a date at least 10 days before the deadline for Class

11 Members to object and opt out).  The Mill and Yurcor also agree not to oppose an

12 application by Class Counsel for case contribution awards of up to a total of

13 $6,000.00 from the Settlement Amount for the four named Plaintiffs to be divided

14 equally among them in addition to the Attorneys' Fees and Expenses awarded to

15 Class Counsel in this Action.  If the Court approves the motion, such fees,

16 expenses and case contribution awards will be paid by The Mill and Yurcor to

17 Class Counsel (with 4 separate individual checks for the case contribution awards)

18 within ten (10) days after the Effective Date.  If the Court reduces the amount of

19 fees, expenses and/or case contribution awards, The Mill and Yurcor shall pay the

20 reduced amount within ten (10) days of the Effective Date.  Any thus remaining

21 balance of the Settlement Amount resulting therefrom will then be distributed

22 evenly amongst the entire class per Class Member and included in the waiting-time

23 penalty checks issued by Defendants to Class Members.  The Parties will file with

24 the Court an Exhibit with the list of final waiting-time penalty payments to Class

25 Members to the extent they are not identical in amount to the gross wage portion of

26 the payments.

27

28

**SETTLEMENT AGREEMENT**

## 8. FINAL JUDGMENT AND ORDER APPROVING SETTLEMENT

1. This Agreement is subject to and conditioned upon the issuance by the Court of the Final Judgment and Order Approving Settlement that finally certifies the Settlement Class for the purposes of settlement only, grants final approval of the Settlement, and provides the relief specified herein, which relief shall be subject to the terms and conditions of the Agreement and the Parties' performance of their continuing rights and obligations hereunder.  Such Final Judgment and Order Approving Settlement shall be in substantially the form attached hereto as Exhibit 1 and shall:

a. Confirm the final certification, for settlement purposes only, of the Settlement Class;

b. Confirm the compliance of the Settlement Class with all requirements of Rule 23, including confirmation of the adequacy of the representation of the Class Representative as representative of the Settlement Class;

c. Confirm that the issuance of Notice complied in all respects with the requirements of due process and Rule 23 by providing due, adequate, and sufficient notice to the Settlement Class;

d. Determine that the Agreement is entered into in good faith, is reasonable, fair and adequate, and is in the best interest of the Settlement Class;

e. Dismiss the action with prejudice and without costs to any Party;

f. Release each Released Party from the Released Claims that any Releasing Party has, had, or may have in the future, against each Released Party and provide that the covenant Not To Sue has been given by each Settlement Class Member in favor of each Released Party and that all Settlement Class Members are bound thereby;

23                          **SETTLEMENT AGREEMENT**

38

1        g.     Bar and enjoin all Parties from asserting against any other Party

2    any Released Claim;

3        h.     Release each Plaintiff and Settlement Class Members, and their

4    respective attorneys and agents of each of them, each of the foregoing solely in

5    their capacity as such, and the predecessors, successors, heirs and assigns of each

6    of them, from all claims of every nature and description, known and unknown, that

7    any Defendant has had, or may in the future have relating to or arising from the

8    Released Claims, and bar and enjoin all Defendants asserting the same;

9        i.     Release each Defendant and their respective present and former

10   parents, subsidiaries, divisions and affiliates, the present and former partners,

11   employees, officers, and directors of each of them, the present and former

12   attorneys, accountants, experts, consultants, insurers and agents of them, and the

13   predecessors, successors, heirs and assigns of each of them from all claims of

14   every nature and description, known and unknown, that any Plaintiff and Class

15   Member has, had or may in the future have relating to or arising from the Released

16   Claims, and bar and enjoin all Plaintiffs and Class Members from asserting the

17   same; and

18       j.     Retain the Court's continuing and exclusive jurisdiction over

19   the Parties to the Agreement, including all Settlement Class Members, to construe

20   and enforce the Agreement in accordance with its terms for the mutual benefit of

21   the Parties.

22   **9.     REPRESENTATIONS AND WARRANTIES**

23       1.     The Mill represents and warrants: (a) that it has the requisite corporate

24   power and authority to execute, deliver and perform the Agreement and to

25   consummate the transactions contemplated hereby; (b) that the execution, delivery

26   and performance of the Agreement and the consummation by it of the actions

27   contemplated herein have been duly authorized by necessary corporate action on

28

24              **SETTLEMENT AGREEMENT**

39

the part of The Mill; and (c) that the Agreement has been duly and validly executed and delivered by The Mill and constitutes its legal, valid and binding obligation.

2.    Yurcor represents and warrants: (a) that it has the requisite corporate power and authority to execute, deliver and perform the Agreement and to consummate the transactions contemplated hereby; (b) that the execution, delivery and performance of the Agreement and the consummation by it of the actions contemplated herein have been duly authorized by necessary corporate action on the part of Yurcor; and (c) that the Agreement has been duly and validly executed and delivered by Yurcor and constitutes its legal, valid and binding obligation.

3.    Plaintiffs represent and warrant that they are entering into the Agreement on behalf of themselves individually and as representatives of the putative Settlement Class Members and the Releasing Parties, of their own free will and without the receipt of any consideration other than what is provided in the Agreement or disclosed to, and authorized by, the Court.  Plaintiffs represent and warrant that they have reviewed the terms of the Settlement in consultation with Class Counsel and believe them to be fair and reasonable, and covenants that they will not file a Request for Exclusion from the Settlement Class or object to the Settlement.  Class Counsel represents and warrants that they are fully authorized to execute the Agreement on behalf of the Plaintiffs, individually and as representative of the putative Settlement Class Members and Releasing Parties.

4.    The Parties warrant and represent that no promise, inducement or consideration for the Settlement has been made, except those set forth herein.  No consideration, amount or sum paid, accredited, offered or expended by The Mill or Yurcor in its performance of this Agreement and the Settlement constitutes a fine, penalty, punitive damages or other form of assessment for any claim against it.

**10.    NO ADMISSIONS; NO USE**

The Agreement and every stipulation and term contained in it is conditioned upon final approval of the Court and is made for settlement purposes only.

1  Whether or not consummated, this Agreement shall not be: (a) construed as,
2  offered in evidence as, received in evidence as, and/or deemed to be, evidence of a
3  presumption, concession or an admission by Plaintiffs, Defendants, any Settlement
4  Class Member or Releasing or Released Party, of the truth of any fact alleged or
5  the validity of any claim or defense that has been, could have been, or in the future
6  might be asserted in any litigation or the deficiency of any claim or defense that
7  has been, could have been, or in the future might be asserted in any litigation, or of
8  any liability, fault, wrongdoing or otherwise of such Party; or (b) construed as,
9  offered in evidence as, received in evidence as, and/or deemed to be, evidence of a
10 presumption, concession or an admission of any liability, fault or wrongdoing, or
11 in any way referred to for any other reason, by Plaintiffs, Defendants, any
12 Releasing Party or Released Party in the Action or in any other civil, criminal or
13 administrative action or proceeding other than such proceedings as may be
14 necessary to effectuate the provisions of the Agreement.

15 **11.    TERMINATION OF THIS AGREEMENT**

16      1.    Either Party may terminate this Agreement by providing written
17 notice of any Party given hereto within ten (10) days of written notice to the other
18 Party if any of the following occur:

19          a.    The Court does not ultimately enter an order granting
20 Preliminary Approval Order conforming in all material respects to Sections 3(A)
21 and 3(B) herein and Exhibit 4 hereof;

22          b.    The Court does not conditionally and finally certify the
23 Settlement Class as defined herein or the Court's order certifying the Settlement
24 Class is reversed, vacated, or modified in any material respect by another Court; or

25          c.    The Court does not ultimately enter a Final Judgment and Order
26 Approving Settlement conforming in all material respects to Section 9 herein and
27 Exhibit 1, or if entered, such Final Judgment and Order Approving Settlement is
28 reversed, vacated or modified in any material respect by another Court.

26                              **SETTLEMENT AGREEMENT**

2.      Either Defendant may terminate this Agreement under the circumstances described in Section 5(B).

3.      In the event of termination, the terminating Party shall use its best efforts to cause the Claims Administrator to post information regarding the termination on the website established for the Settlement and to e-mail such information to those Settlement Class Members who provided an e-mail address to the Claims Administrator.  It is expressly agreed that neither the failure of the Court to award Attorneys' Fees and Expenses to Class Counsel, nor the amount of such Attorneys' Fees and Expenses or Incentive Awards that may be finally determined and awarded, shall provide a basis for termination of this Agreement.

4.      In the event that this Agreement terminates for any reason, all Parties shall be restored to their respective positions as of immediately prior to March 14, 2013, the date of execution of the Tentative Agreement executed in mediation, which Tentative Agreement shall then also be deemed terminated.  Upon termination, Sections 4(3), 11, 12(2), 12(3), and 13 herein shall survive and be binding on the Parties, but this Agreement and the Tentative Agreement shall otherwise be null and void and the litigation will resume.

## 12.    MISCELLANEOUS PROVISIONS

1.      Entire Agreement

The Agreement, including all Exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the Settlement and shall supersede any precious agreements, representations, communications and understandings among the Parties with respect to the subject matter of the Settlement.  The Agreement may not be changed, modified, or amended except in a writing signed by all Parties and, if required, approved by the Court.  The Parties contemplate that certain of the Exhibits to the Agreement relating to Class Notice may be modified

27                          **SETTLEMENT AGREEMENT**

1   by subsequent agreement of The Mill and Yurcor and Class Counsel or by the
2   Court prior to dissemination to the Settlement Class.

3       2.    <u>Governing Law</u>

4       The Agreement shall be construed under and governed by the laws of the
5   State of California, applied without regard to laws applicable to choice of law.

6       3.    <u>Execution in Counterparts</u>

7       The Agreement may be executed by the Parties in one or more counterparts,
8   each of which shall be deemed an original but all of which together shall constitute
9   one and the same instrument.  Facsimile signatures or signatures sent by e-mail
10  shall be treated as original signatures and shall be binding.

11      4.    <u>Notices</u>

12      Any notice, instruction, application for Court approval or application for
13  Court orders sought in connection with the Settlement and the Agreement or other
14  document to be given by any Party to any other Party shall be in writing and
15  delivered personally, by UPS or Federal Express next business day delivery, or
16  sent by registered or certified mail, postage prepaid, if to The Mill and Yurcor to
17  the attention of The Mill and Yurcor's Counsel, and if to Settlement Class
18  Members to the attention of Class Counsel on their behalf.

19      All notices to the Parties or counsel required by the Agreement shall be
20  made in writing and communicated as set forth above to the following addresses:

21      a.    If to Plaintiffs or Class Counsel:

22      STUART LIBICKI (SBN 57626)
23      SCHWARTZ, STEINSAPIR,
        DOHRMANN & SOMMERS LLP
24      6300 Wilshire Boulevard, Suite 2000
    Los Angeles, California 90048-5268

25  //
26  //
27  //
28  //

43

b.      If to The Mill's Counsel:

MICHELE J. BEILKE
JULIA YENHA TRANKIEM
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071

c.      If to Yurcor's Counsel:

GREGORY V. MERSOL
BAKER & HOSTETLER LLP
PNC Center,
1900 East 9th Street, Suite 3200
Cleveland, OH  44114-3482

5.     Good Faith

The Parties agree that they will act in good faith and will not engage in any conduct that will or may frustrate the purpose of this Agreement, including but not limited to, soliciting or otherwise encouraging, directly or indirectly, class members to request exclusion from the Class, object to the Settlement or appeal the Final Judgment.  The Parties further agree, subject to Court approval, to reasonable extensions of time to carry out any of the provisions of the Agreement.

6.     Protective Orders

All orders, agreements and designations regarding the confidentiality of documents and information ("Protective Orders") remain in effect, and all Parties and counsel remain bound to comply with the Protective Orders.  Within thirty (30) days of the Effective Date, the Parties will certify in writing that they have used their best efforts to destroy or return to the producing party all documents and information produced in the Actions that were designated as "Confidential" or "Mediation Only" pursuant to the Protective Order, previously entered in the Action.  Notwithstanding this provision, Defense Counsel and Class Counsel may retain copies of all documents submitted to the Court, but those documents must be kept confidential and will continue to be subject to the Protective Order.

7.     Press Release

The Parties will jointly prepare a press release regarding resolution of the litigation which will constitute the Parties' exclusive statement concerning the matter.  Otherwise, this Settlement Agreement and its terms shall remain confidential until the Parties obtain preliminary approval from the Court.

8.     Binding on Successors

The Agreement shall be binding upon, and inure to the benefit of, the heirs, successors, assigns, executors and legal representatives of the Parties to the Agreement and all Defendants and Released Parties.

9.     Arm's Length Negotiations

The determination of the terms and conditions contained herein of and the drafting of the provisions of this Agreement has been by mutual understanding after negotiation, with consideration by, and participation of, the Parties hereto and their counsel.  This Agreement shall not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

10.     Waiver

The waiver by one Party of any provision or breach of the Agreement shall not be deemed a waiver of any other provision or breach of the Agreement.

11.     Variance

In the event of any variance between the terms of this Agreement and any of the Exhibits hereto, the terms of this Agreement shall control and supersede the Exhibit(s).

12.     Exhibits

All exhibits to this Agreement are material and integral parts hereof, and are incorporated by reference as if fully rewritten herein.

13.     Taxes

No Party or their counsel has provided any representation or guarantee respecting the tax consequences of the Settlement as to any Settlement Class

1    Member.  The Class Notice will direct Settlement Class Members to consult their

2    own tax advisors regarding the tax consequences of the Settlement and any tax

3    reporting obligations with respect thereto.  Each Settlement Class Member is

4    responsible for his/her tax reporting and other obligations respecting the

5    Settlement, if any.

6        14.    Modification in Writing Only

7        This Agreement and any and all parts of it, may be amended, modified,

8    changed or waived only by an express instrument in writing and signed by the

9    Parties.  The Parties recognize and agree that all modifications are subject to Court

10   approval.

11       15.    Integration

12       This Agreement represents the entire understanding and agreement among

13   the Settling Parties and supersedes all prior proposals, negotiations, agreements,

14   and understandings related to the subject matter of this Agreement.  The settling

15   Parties acknowledge, stipulate and agree that no covenant, obligation, condition,

16   representation, warranty, inducement, negotiation or understanding concerning any

17   part or all of the subject matter of this Agreement has been made or relied upon

18   except as set forth expressly herein.

19       IN WITNESS WHEREOF, each of the Parties has caused the Agreement to

20   be executed on its behalf by its duly authorized counsel of record, all as of

21   the day set forth below.

22

23   Dated: July 2Y, 2013          MICHELE J. BEILKE
                                    JULIA YENHA TRANKIEM
24                                  REED SMITH LLP

25                                  By:_____
26
                                       JULIA YENHA TRANKIEM
27                                     Attorneys for Defendant
                                       The Mill Group, Inc.
28

                          31                  SETTLEMENT AGREEMENT

46

1

Dated: July 25, 2013

2

GREGORY V. MERSOL
BAKER AND HOSTETLER LLP

3

By:

4

GREGORY V. MERSOL
**Attorneys for Defendant
The Churchill Benefit Corp. dba Yurcor**

5

6

Dated: July 26, 2013

ARTHUR GREBOW, ESQ.
GREBOW & RUBIN, LLP

7

8

9

By: _____
ARTHUR GREBOW

10

WILLIAM T. PAYNE
PAMINA EWING
FEINSTEIN DOYLE
    PAYNE & KRAVEC, LLC

11

12

13

STUART LIBICKI
SCHWARTZ, STEINSAPIR,
    DOHRMANN & SOMMERS LLP

14

15

16

**Attorneys for Plaintiffs**

17

18

19

20

21

22

23

24

25

26

27

28

32                          SETTLEMENT AGREEMENT

47